

1   Fidel Pajarillo
2   6706 Zephyr Wind Avenue
    Las Vegas, Nevada 89139
3   (702) 296-4766
    Plaintiff in Proper Person
4
              **UNITED STATES DISTRICT COURT**
5
                **DISTRICT OF NEVADA**
6

7   Fidel Pajarillo,                          |
8                    Plaintiff,               |    Case No. **2:09-CV-00078-LDG-GWF**
                                              |
9        vs.                                  |
10  COUNTRYWIDE HOME LOANS, INC.,             |
11  RECONTRUST COMPANY, MORTGAGE              |    **FIRST AMENDED COMPLAINT**
    ELECTRONIC REGISTRATION SYSTEMS,          |
12  INC., and DOES I through X, inclusive,    |
                                              |
13                   Defendants.              |
14  _____

15        **COMPLAINT FOR: BREACH OF CONTRACT;**
16  **FRAUD / MISREPRESENTATION; CIVIL CONSPIRACY;**
        **WRONGFUL FORECLOSURE; RESCISSION;**
17       **QUIET TITLE; and INJUNCTIVE RELIEF**

18
19        COMES NOW Fidel Pajarillo, Plaintiff herein ("Plaintiff"), and complains and alleges
20  against the Defendants as follows:

21                        **PARTIES**

22       1.      Plaintiff, Fidel Pajarillo ("Plaintiff"), is, and was at all times relevant hereto, a
23  single man domiciled in Las Vegas, Clark County, Nevada, and the owner of real property
24  located at 6706 Zephyr Wind Avenue, Las Vegas, Nevada 89139 (hereinafter referred to as the
25  "subject property"), APN 176-11-210-017, and more particularly described as: PINNACLE
26  PEAKS-TORREY PINES NORTHWEST PLAT BOOK 91 PAGE 28 LOT 17 BLOCK 1

27       2.      Defendant, Countrywide Home Loans, Inc. ("Countrywide") was a corporation
28  which conducted business in the State of Nevada. Countrywide was wholly acquired by Bank

                              1

of America in July of 2008.

3.    Defendant, Recontrust Company ("Recontrust") is a Nevada corporation and is operating as Trustee while being a wholly owned subsidiary of Defendant Bank of America.

4.    Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation that is not licensed to conduct business in Nevada, but it nevertheless purports to obtain security interests in real property located in Nevada.

5.    Defendants Does 1 – 100 are individuals, entities, and/or corporations, and the true names and capacities are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff alleges that each Defendant designated as a Doe is specifically responsible, in part, for the wrongful conduct alleged herein that injured and/or damaged Plaintiff on these premises, and that the Doe Defendants are responsible for the events and happenings referred to and proximately caused said injury and damage thereby to Plaintiff as alleged herein. Plaintiff shall seek leave of Court to amend the Complaint to substitute the true names and capacities of each Doe Defendant when the same are ascertained and will further seek leave to join said Defendants in these proceedings.

## GENERAL BACKGROUND

6.    This is an action for rescission of an illegal and void mortgage and note to certain real estate; for quiet title; for injunctive relief and for monetary damages. The purported mortgage and note and the actions taken by Defendants contain unfair trade practices, predatory lending practices, misrepresentation and outright fraud.

7.    Plaintiff seeks recovery for damages for a wrongful foreclosure, and breach of contract based upon non-disclosure of critical material facts, terms, and third parties in the loan documents, at closing, and which took place after closing through the process of securitization of the note, as well as rescission, injunctive relief, and quiet title.

8.    On or about December 2, 2005, Plaintiff entered into a loan agreement with Countrywide Home Loans ("Countrywide"). The parties executed a Deed of Trust with Plaintiff as "Trustor," MERS as "Beneficiary," and Recontrust Company as the original

"Trustee." To Plaintiff's knowledge, the Trustee has not been changed. In or around July of 2008 the loan was transferred to Bank of America Home Loans, who became the "servicer" of the loan when it acquired Countrywide.

9.    On or about May 20, 2009, Countrywide stated in a letter sent to Plaintiff that "The owner of the Note is U.S. Bank National Association, as Trustee, for Harborview 2006-1 Trust Fund, whose address is 60 Livingston Avenue, Saint Paul, MN 55107. Bank of America has serviced the loan since its inception." A copy of the said letter is attached hereto as Exhibit "A." These facts, and other information, give rise to Plaintiff's contention that the subject loan has been securitized. In securitizing Plaintiff's loan, Defendant has acted in violation of state and federal statutes and regulations, in that the following were not disclosed to Plaintiff during the entire loan process and at closing:

(a)    that Plaintiff's identity and personal information was used to further the profits of the lender(s) and their agents, associates, affiliates, employees and/or servants without the knowledge or permission of Plaintiff and in a manner which violates the terms of the mortgage loan;

(b)    that the mortgage transaction was, in reality, a disguised securities transaction whereby Plaintiff's signature on the promissory note created an instrument which the lender and other unknown, undisclosed, unlicensed and/or unregistered third parties would use in whole or in part in the issuance of an unregulated security, which would be sold, transferred, re-assigned and/or re-conveyed to aggregators, brokers and other third parties who would then sell portions (tranches) of the security to other investors in the form of certificates, in the expectation that all parties involved – except Plaintiff – would profit from the scheme;

(c)    that said issuance of an unregulated security was, upon information and belief, without proper authority and in violation of the United States Securities and Exchange Commission ("SEC") rules and regulations, to which Plaintiff never gave his consent, nor have any desire to take part in;

(d)    that the value of the property was fraudulently inflated as a result of

3

dishonest appraisal practices utilized by the undisclosed third parties in order to increase the face value of the security created by Plaintiff's signature on the promissory note (and increase the profits of the third parties and Defendants herein), but which fraudulent appraisal also increased the reported Annual Percentage Rate of interest to where it became usurious;

(e)   that the purported lender, Countrywide, in "table funding" the said loan, acted as a "front" company for unknown, undisclosed third party investors who were the true source of the funds for the loan, but which undisclosed parties are not registered, licensed, chartered or regulated as a banking or lending institution in Nevada, and in doing so, Defendant made numerous material misrepresentations in its loan documents by calling itself the "lender;" and

(f)   that Defendants Countrywide and MERS do not possess the actual original note signed by Plaintiff – absolutely essential in exercising standing and/or authority – by virtue of the sale and securitization of Plaintiff's note, and as such, said Defendants are acting wholly without authority or standing to collect, foreclose, or otherwise enforce the terms of the loan, and therefore threaten to commence an unlawful and wrongful foreclosure.

10.   Defendants' conduct, and each of them, was done as a group of individuals or associations in the mortgage industry conspiring together for their mutual benefit, all to the disadvantage and damage of Plaintiff as more particularly set forth herein.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

### (Defendant Countrywide)

11.   Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

12.   Plaintiff and Defendant Countrywide entered into various written agreements connected with the subject mortgage loan wherein both parties were to perform various tasks.

4

Plaintiff diligently performed each and every task that he was required to do under the terms of the agreement, until he discovered the wrongful behavior of Defendant. Plaintiff, in a good faith belief that the contract had been breached, began seeking remedies which could cure the matter. Plaintiff submits that nowhere in the loan papers is it revealed that:

(a)     the loan was actually a disguised securities transaction;

(b)     when the loan was sold and/or securitized, the note would be separated from the mortgage (as only the *note* – the promise of the payments from the borrower – is "pooled" in the security instrument);

(c)     the mortgage would be satisfied and paid in full upon the sale of the note;

(d)     neither the note nor the mortgage would be enforceable separately without the other; and

(e)     Plaintiff's payments would be misapplied by being promised to undisclosed third party investors, with the servicer taking a portion for its fee, and the trustee of the special purpose vehicle (securitization trust) also receiving a fee, and through this misapplication, it would be impossible for Plaintiff to pay off the mortgage in this way.

13.     Plaintiff, whose money funded the entire scheme, has attempted to discern exactly when the securitization took place, but Defendant has refused to provide the information, even though lawfully demanded by the borrower via Qualified Written Request.

14.     Defendant, as described above, failed to perform in good faith, was without clean hands, and lacked full disclosure necessary to fulfill the obligations set out in the said agreement, and therefore breached the various terms, duties and obligations of the agreement as required by law.

15.     As a direct and proximate result of the conduct of Defendant, Plaintiff has been damaged in an amount in excess of $10,000.00, the exact amount to be proven at trial.

/ / /

/ / /

## SECOND CAUSE OF ACTION

### (Fraud / Misrepresentation)

### (Defendants Countrywide and MERS)

16.     Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

17.     The Defendants, and each of them, intentionally and knowingly made false representations to Plaintiff in the course of the loan process, its servicing, and in the documentation.   Plaintiff justifiably relied upon these representations to their detriment. Examples of the Defendants' fraud and/or misrepresentations are:

(a)     That the mortgage loan application and process was in reality a disguised securities transaction which violated various laws and regulations, in that the securitization of the loan involved void contracts, fraudulent tax-evasion schemes, conflicts of interest, and the formation of a trust for an illegal purpose, as well as other unlawful deeds;

(b)     That the defendant lender utilized fraudulently inflated appraisals without regard to true values of comparable properties, with the sole purpose of increasing the value of the note and thereby increase the profits of Defendants and for the undisclosed third parties who participated;

(c)     That the reported Annual Percentage Rate of interest was underreported due to the omission of hidden costs, fees, insurance and other payments regarding the undisclosed securities transaction, and due to the fraudulently inflated appraisal;

(d)     That Plaintiff's identification would be used to create a vehicle for profit for the Defendants and for the undisclosed third parties, without the knowledge or permission of Plaintiff;

(e)     That Defendant Countrywide was not the true source of the funds for the subject loan, but in fact, only "rented" its charter to unregistered and unlicensed third parties not authorized to make loans in Nevada.

(f)     That, upon the sale of its interest in the note signed by Plaintiff,

6

Defendant would relinquish its authority to foreclose or collect payment;

(g)     That the loan statements delivered to Plaintiff by the servicer on a monthly basis contained misrepresentations intended to deceive Plaintiff into believing that the mortgage was being paid off through Plaintiff's payments, when in actuality, the said payments were divided and kept by parties who did not pay any portion towards Plaintiff's mortgage;

(h)     That the servicer used the United States Mail to deliver said fraudulent mortgage statements on a monthly basis; and

(i)     That MERS fraudulently facilitated "transfers" or "conveyances" of title through its electronic record-keeping, but in doing so, has made it impossible for Plaintiff to see the full and complete chain of transfers of title (endorsements), and further, in doing so, MERS has cheated state and county governments out of millions of dollars in transfer taxes had the transfers been lawfully recorded, to which Plaintiff objects having been made a participant without his knowledge.

18.     Defendants therefore, through their fraud and misrepresentation, caused Plaintiff severe economic and personal damages, in the fact that Plaintiff was induced to take a loan that was not as it was represented, and did not serve its purported purpose.  Plaintiff had no intention of becoming the source of funds for an undisclosed security instrument which eventually also defrauded the purchasers of shares of the said security.  Plaintiff was directly misled by Defendant's fraud, misrepresentation, and omission regarding the nature of the transaction which directly contributed to Plaintiff's damages as set forth herein.

19.     As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in an amount in excess of $10,000.00, the exact amount to be proven at trial.

20.     Additionally, the conduct of Defendants was done willfully, intentionally, with malice and oppression, and with a conscious disregard for Plaintiff's rights, and therefore, Plaintiff is entitled to punitive damages in an amount deemed appropriate to punish Defendants for their egregious and outrageous conduct.

## THIRD CAUSE OF ACTION

### (Civil Conspiracy)

### (All Defendants)

21.    Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

22.    These Defendants, and each of them, reached an understanding and engaged in the sequence of events and/or course of conduct described herein, and otherwise agreed and conspired together and profited by their conduct as set forth herein, and are currently threatening to commence a wrongful foreclosure and trustee's sale, to take Plaintiff's property when no party has the authority to do so.

23.    The Defendants, and each of them, acted together in the furtherance of this common scheme, plan and/or conspiracy with the knowledge, objective, and mutual purpose that they would profit from their wrongful conduct at the expense of the Plaintiff. Defendants have commenced an unlawful foreclosure by delivering to Plaintiff a "Notice of Default and Election to Sell" dated September 10, 2008 (attached hereto as Exhibit "B"), but which Notice is based on misrepresentations by the foreclosing parties.    Plaintiff rejects as false any "default" claimed by Defendants, since the owner(s) of the note – the investors in the securitized loan – are not the party threatening foreclosure or sale, nor are there any contractual terms between Plaintiff and the owner(s) which would obligate Plaintiff.

24.    Defendant MERS is named as the beneficiary, in a "nominee" capacity for the lender, a designation which Plaintiff alleges is invalid.  MERS relies on representations made on its website to proffer the theory that it has the authority to foreclose (attached hereto as Exhibit "C"):

> In mortgage foreclosure cases, the plaintiff has standing as the holder of the note and the mortgage. When MERS forecloses, MERS is the mortgagee and it is the holder of the note because a MERS officer will be in possession of the original note endorsed in blank, which makes MERS a holder of the bearer paper. MERS will not foreclose unless the note is endorsed in blank and held by MERS.

25.     Plaintiff contends that there never was any "original note endorsed in blank" executed for the subject loan, and further believes that said note is not, in any way, an instrument which can be considered to be "bearer paper." If the note were "bearer paper," there would be no need for recordation of transfers, allonges to be attached, or the endorsements from the applicable parties on the note.

26.     As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in an amount in excess of $10,000.00, the exact amount to be proven at trial.

27.     Additionally, the conduct of Defendants was done willfully, intentionally, with malice and oppression, and with a conscious disregard for Plaintiff's rights, and therefore, Plaintiff is entitled to punitive damages in an amount deemed appropriate to punish Defendants for their egregious and outrageous conduct.

## FOURTH CAUSE OF ACTION

### (Rescission)

### (Defendant Countrywide)

28.     Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

29.     On or about December 2, 2005, in Las Vegas, Nevada, Plaintiff and Defendant Countrywide (as Countrywide at the time) entered into a written contract which appeared to Plaintiff to be a normal mortgage agreement whereby Defendant would agree to be the source of funds for a mortgage loan, and Plaintiff would agree to make payments in accordance with the contract's terms in order to pay off the said mortgage in this manner.

30.     Plaintiff, in reasonable reliance that he could trust Defendant Countrywide and that Defendant would fulfill its duty of due diligence as a lender to ensure that Plaintiff would not enter into an agreement whose terms were not exactly as stated, entered into said contract in good faith.

31.     Nevertheless, Defendant, with the knowledge and intent to deceive Plaintiff and

to induce him to enter into the agreement, set forth the said contract which contained misrepresentations, falsities, and other untrue and unethical statements and omissions, all without Plaintiff's awareness. In all, Plaintiff paid over $150,000.00 in closing costs, down payments and monthly loan payments before discovering the fraudulent misrepresentations by Defendant.

32.     Plaintiff claims rescission under the following theories:

(a)     <u>Common Law Fraud by Countrywide</u>.   Plaintiff claims that his obligations are vitiated as the agreement is null and void due to Defendant's having made critical material misrepresentations in its loan documents, Defendant's nonperformance of its responsibilities, and Defendant's "servicing" of the loan – the practice of making it appear to Plaintiff that the payments were being credited to the mortgage, when in fact, the mortgage has long since been satisfied, as the payments are misapplied to scores of undisclosed third parties, none of which go to pay off Plaintiff's mortgage – all of which contains elements of fraud, and all of which give rise to rescission;

(b)     <u>Securities Fraud</u>.   Due to the nature of the "loan" being in reality a disguised securities transaction, which necessitated the participation of third parties whose identities were meant to be kept secret from Plaintiff, there exists a conflict of interest by the servicer – who was also the originator – in applying Plaintiff's payments in ways other than what was represented; and also in the formation of the trust which holds the security instrument that contains Plaintiff's note, but which trust is fraudulent by virtue of the fact that its declaration of trust is for an illegal purpose;

(c)     <u>Statutory Rescission.</u>   Plaintiff additionally claims rescission of the contract based on deceptive lending practices and deceptive business practices as more fully described herein.

33.     Additionally, due to the nature of the "loan" being in reality a disguised securities transaction, and that the transaction continues to this day by virtue of the fact that certificates may still be purchased and redeemed by investors, Plaintiff contends that the "loan"

is one single transaction which was never completed and the loan closing has never been consummated, therefore, any right to rescind, including those allowed under TILA, has not expired nor has it been waived by Plaintiff.

34.   Plaintiff, in good faith and based on the information contained herein, has sent, by Certified Mail, a Notice of Intent to Rescind to Defendant Countrywide, a copy of which is attached hereto as Exhibit "D." By law, Defendants must either honor the rescission, or file a declaratory action in opposition. Defendants have done neither.

35.   Plaintiff has suffered damages by the fraud contained in the subject loan of Defendant Countrywide, and also by the fraudulent servicing of the loan by this Defendant. Plaintiff hereby requests that this Court consider and honor Plaintiff's Notice of Rescission and order that the loan is rescinded and restore Plaintiff to his position prior to entering into the said mortgage loan agreement with Defendant. Plaintiff will suffer irreparable and substantial harm if the consideration furnished by him is not restored.

## FIFTH CAUSE OF ACTION

### (Wrongful Foreclosure)

### (All Defendants)

36.   Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

37.   Plaintiff alleges that these Defendants commit or threaten to commit a Wrongful Foreclosure by the following bases:

(a)   Fraud or Misrepresentation. Nowhere in the loan documents was it disclosed that the "mortgage loan" was in reality a disguised securities transaction, which resulted in Plaintiff making payments that were not credited to the mortgage, but instead, went to pay investors who bought "certificates" in the pooled mortgage-backed security instrument that contained Plaintiff's loan. Plaintiff has not contracted with, and is therefore under no obligation and cannot be in "default" to, any secondary-market investors. Also not disclosed were numerous terms and parties necessary to

complete the securitization of the notes in the pool (aggregators); to market the said security (underwriters); to pay certificateholders (securities administrator); to guarantee payment in the event the borrower would default (insurance, cross-collateralization, overcollateralization, credit default swaps); plus master servicer's fees, sub-servicer's fees, trustee's fees, and most importantly, the fact that upon its sale of the note, the lender was paid in full satisfaction of the mortgage (but did not inform Plaintiff of this fact), and had separated the note from the mortgage, rendering both of them unenforceable.

(b) <u>Breach of Contract</u>. The loan documents contained absolutely nothing regarding the securitization of the note, as described in (a) above. Plaintiff believed that the loan was a conventional mortgage loan, wherein his payments would go to pay off his mortgage. Defendant breached the Agreement by creating a different payment stream, wherein Plaintiff's payments, after fees were deducted for the servicer, the trustee of the special purpose vehicle, and other participants, went into the trust which held the mortgage-backed security instrument that contained Plaintiff's note, and that money was either paid out or promised to the investors who bought certificates. It is impossible for Plaintiff's mortgage to be paid in this way because (1) only a portion of the payment goes to the holders of the note, (2) it is only the promise of the payments on the note, and not the mortgage itself, which was pooled with other notes to create the said security, and (3) the money taken by the investors upon the redemption of their certificates obviously does not go towards paying off Plaintiff's mortgage.

(c) <u>Deceptive Trade Practices</u>. The making of the loan, and the servicing of it, was riddled with unfair and deceptive practices that violated the Nevada Deceptive Trade Practices Act, found at NRS 598.0915 (knowingly making a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease, or making any other false representation in a transaction), 598.092 (knowingly misrepresenting the legal rights, obligations or remedies of a party to a transaction), and 598.0923 (failure to disclose a material fact in connection with the sale or lease of

goods or services).  Defendant violated NRS 598.0915 because it was not the source of the funds for the loan, though its loan documents continually refer to it as the "lender;" violated NRS 598.092 because it made Plaintiff believe he had to waive his right to Presentment and Notice of Dishonor, when in fact, the Rights to Presentment and Notice of Dishonor are preserved under fraud; and violated NRS 598.0923 because Defendant failed to disclose <u>many</u> material facts in connection with the loan, for example, the claims for fraud/misrepresentation based on the undisclosed securitization of the loan, and undisclosed terms and parties therein.

(d)     <u>Misapplied Payments</u>.  Because of the nature of the securitized loan, Plaintiff's payments were handled by the "servicer" each month, divided up as per the Pooling and Servicing Agreement, and paid out to the servicer(s), trustee, and the investors of the security instrument, and possibly additional parties.  NONE of these monies were applied to Plaintiff's mortgage.  However, the servicer's job in this scheme is to make it *look* like the Plaintiff's payments were paying off the mortgage.  A proper accounting would easily show that any of Plaintiff's payments that were handled in this way could not have been properly applied to the mortgage.  In fact, they were not applied to the mortgage at all, and were not needed to be applied to the mortgage, by virtue of the fact that the mortgage was satisfied in full upon the creation of the security instrument which contained the promise of the payments from the *note only*.

(e)     <u>Improper Accounting</u>.  Each month, the servicer sent mortgage loan payment statements which stated (1) the payment amount due; (2) the amount past due; (3) the amount to be applied to principal; (4) the amount to be applied to interest; (5) the balance remaining on the loan, and (6) various other entries such as "unpaid late charges," etc., while each month, inconsistent with the accounting on the statement, the said servicer paid out different amounts of Plaintiff's payment to the participants in the securitization of the note, whose identities remain unknown to Plaintiff.  Plaintiff alleges that the servicer took a fee, the trustee of the "special purpose vehicle" which held the security was paid a fee, and only a portion of the payment was paid into the

"pool" for the investors who purchased certificates and who were promised terms of payment. Therefore, the servicer, each month, knowingly provided a fraudulent, improper and inaccurate accounting to the Plaintiff, as the statements never accounted for where Plaintiff's payments <u>actually</u> went. Plaintiff further contends that since the servicer used the U.S. Mail to deliver the said fraudulent mortgage statements to the Plaintiff, the servicer committed mail fraud on a monthly basis.

(f)     No Authority to Foreclose. The essential element for foreclosure is: possession of both the original Note and Mortgage, together. Individually, neither is enforceable, as per *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007), stating that, "[t]o show standing in a foreclosure action, . . . the [lender] plaintiff must show that it is the holder of the **note and the mortgage** at the time the complaint was filed;" and, *Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872), stating that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident;" adding that "[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Also see *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. 1996) where it was stated that "[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures," and that, "[i]f the debt is not transferred, neither is the security interest;" and *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952), stating that "assigning only the deed without a transfer of the promissory note is completely ineffective."

Also, from *Landmark v. Kesler*, the Supreme Court of Kansas stated: "The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not

14

also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009).

Plaintiff submits that it can easily be shown that the investors who purchased certificates in the security instrument are not agents of the lender or vice versa. Therefore, we are left with only two possible circumstances: either (1) the note *was* separated from the mortgage upon its sale and creation of a new security instrument containing a "pool" of notes, into which the payments from borrowers are promised; or (2) the note *was not* separated from the mortgage, and both are present in the security instrument owned by the investors who purchased certificates. In the first instance, if the note <u>is</u> separated from the mortgage, neither the note nor the mortgage is enforceable, as per the cases listed above. In the second instance, if the note and mortgage <u>are not</u> separated, then it is the secondary-market investors, as holders of the security instrument, which "own" both. In that case, we must ask, by what authority can the lender or servicer foreclose, if it has neither the note nor the mortgage?

(g)    <u>Emotional Distress.</u>  Defendants, whether negligently or intentionally, inflicted severe emotional distress upon Plaintiff by the threat, or the actual act, of foreclosure and sale of Plaintiff's home, when they had no authority to do so. Plaintiff suffered the equivalent of the loss of the entire value of the home, and was distressed on a daily basis by the false representations of the Defendants. Further, Plaintiff asserts that Defendants' intentions are made clear and indisputable in the retention of counsel to represent the foreclosing lender, "nominee" beneficiary, and/or trustee in this matter, whose position steadfastly remains that these parties actually have the proper authority to carry out a foreclosure and sale, even though they cannot prove such claims.

38.    Plaintiff entered into the agreement in good faith that Defendant would not have misrepresented facts or included fraudulent terms and conditions in its loan process. Only recently did Plaintiff discover otherwise, and upon such discovery, has availed himself of all remedies known to him.

39.    Plaintiff requests that this honorable Court order that any foreclosure be set

aside and/or voided due to the fraud and misrepresentations made by Defendants, and that Defendants be ordered to restore Plaintiff to his position prior to entering into the loan agreement as set forth herein, including the restoration of all payments made by Plaintiff to Defendants under the subject loan agreement, and the reimbursement of all costs incurred by Plaintiff in the process of bringing this lawsuit.  In the alternative, and in the interest of justice, Plaintiff requests that the Court order the Defendants to produce the original Note and Mortgage, together, to prove their claimed authority to conduct the said foreclosure and sale.

40.    In addition, the conduct of Defendants was done willfully, intentionally, with malice and oppression, and with a conscious disregard for Plaintiff's rights, and therefore, Plaintiff is entitled to punitive damages in an amount deemed appropriate to punish Defendants for their egregious and outrageous conduct.

## SIXTH CAUSE OF ACTION

### (Quiet Title)

### (All Defendants)

41.    Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

42.    At some point near – or even *before* – the "closing" of the subject loan, Defendant Countrywide sold and securitized Plaintiff's loan note.  As a result of said sale, the note is now irreplaceably separated from the said mortgage.  Countrywide has retained the servicing rights throughout the entire term of the loan to date.

43.    As a result of said sale of Plaintiff's original note, Defendant Countrywide was paid in full satisfaction for the mortgage; and there is, and can be, no default on the part of Plaintiff to this Defendant; nor can there be any alleged "default" claimed by Defendant Countrywide acting as "servicer" due to the fact that, by its own admission, it does not possess the note.  As such, this defendant cannot lawfully claim any right to title of the subject property without both the note and mortgage.

44.    Additionally, Defendant Recontrust cannot claim any interest in the title to the

16

subject property, as its role of Trustee does not include having title transferred or conveyed to it in any way. Recontrust never at any time possessed either the note or mortgage.

45.     Further, MERS cannot claim title or lawfully take possession of the property located at 6706 Zephyr Wind Avenue, Las Vegas, Nevada 89139, by virtue of the fact that MERS did not at any time, and does not now, possess either the note or the mortgage, nor is MERS the properly designated agent for any party to the said foreclosure.    MERS' representation as "nominee" for the lender, while in itself suspect as it is unclear what a "nominee" may lawfully do, is by its nature lacking in proper authority which only a properly designated "agent" possesses.  Moreover, even assuming MERS was the agent for the lender, it is not the lender who is currently the owner of the note, but the investors in the securitized loan.  MERS is obviously not the agent, or "nominee," for all of those investors.

46.     These Defendants are aware that none of them possess the original note, none are entitled to foreclose, and none are entitled to collect an alleged debt for a mortgage which has been satisfied.  Even if one of the defendants could produce the original note, it has been separated from the mortgage, which is already satisfied.  Along with the egregious behavior of unlawfully initiating or threatening to initiate a foreclosure action against Plaintiff in violation of Nevada law, none of the named Defendants have any clear or definable interest in the title to the subject property.

47.     Plaintiff further contends that, due to the sheer number of investors of certificates in the securitized loan – which contains not only Plaintiff's note but dozens, perhaps hundreds of other notes pooled with it – and due to the fact that the certificates, on information and belief, are issued in varying denominations with various maturity dates, any claim to "title" by these investors is hopelessly clouded, making it impossible for such a group to hold any clear and definable interest in the subject property.  Further, the investors never held any claim to the *mortgage*, which had been satisfied before the creation of the security certificates, and without both the note and mortgage, any claim to title is flawed and incomplete.  Moreover, since the notes have been "pooled" into the security instrument, it is also impossible to tell which notes are paid, which are deficient, and which are satisfied.

48.    Plaintiff therefore alleges that Defendants' claims of interest in the property belonging to Plaintiff herein are without any merit whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.  Conversely, Plaintiff is the only party that entered the transaction with good faith and clean hands, and is also the only party with a clear and definable interest in the title to the subject property.

49.    This Court possesses the equitable authority to quiet the title to this property based upon the inability of each and every Defendant to establish their rights, title and interest to any portion of the subject property.

50.    Plaintiff therefore seeks a declaration and/or order that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property, and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.  Plaintiff requests that the Court quiet the title or record the subject property in the sole name of Fidel Pajarillo, Plaintiff herein, subject to any lawful encumbrance.

## SEVENTH CAUSE OF ACTION

### (Injunctive Relief)

### (All Defendants)

51.    Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

52.    On or about February 21, 2009, Plaintiff submitted via Certified Mail a Qualified Written Request ("QWR") to Defendant Countrywide, wherein many pertinent questions were asked and documents requested to be produced regarding the subject loan and the accounting thereof.  Under the federal Real Estate Settlement Procedures Act (12 USC § 2601), once the authority of the Act has been invoked through submission of a QWR, injunctive relief may be issued to stay any foreclosure proceeding until questions of major importance are answered and proof by way of production of documents is provided which can

settle the main issues of this lawsuit. Defendant did not comply with the provisions of the Act, and has denied answering all of Plaintiff's questions, and refused to provide the requested documentation. A copy of the said QWR is attached hereto as Exhibit "E."

53.     Therefore, Plaintiff requests that this honorable Court issue injunctive relief to permanently enjoin all Defendants, as well as their agents, affiliates, subsidiaries, employees and/or assigns, from taking any action adverse to Plaintiff's free and clear use and enjoyment of the subject property. Additionally, Plaintiff requests that this Court compel Defendant to provide the information lawfully requested by Plaintiff in his QWR to settle the remaining issues raised in this lawsuit.

54.     Plaintiff further requests that this Court declare and order that any other mortgages and/or encumbrances be removed from the title to the subject property, and that the Court enter any order in furtherance of the relief requested herein, including additional injunctive relief.

WHEREFORE, Plaintiff hereby requests that judgment be entered against Defendants and each of them, and in favor or Plaintiff as follows:

1.     Special damages in excess of Ten Thousand dollars ($10,000.00);

2.     General damages in excess of Ten Thousand dollars ($10,000.00);

3.     Punitive damages in an amount deemed appropriate to punish Defendants for their egregious and wrongful conduct;

4.     Costs of this lawsuit and attorney fees if and where applicable;

5.     That the Court quiet title as to all claimants except for Plaintiff, Fidel Pajarillo, who is the rightful property owner, subject to any lawful encumbrance;

6.     In addition to the monetary damages prayed for above, that the Court rescind the subject loan so that Plaintiff is not disadvantaged by the wrongful conduct of these Defendants;

7.     For injunctive relief as requested; and

/ / /

8.    For such other and further relief as this Court deems just and proper.

Dated this 23rd day of October, 2009.

Fidel Pajarillo
6706 Zephyr Wind Avenue
Las Vegas, Nevada 89139
(702) 296-4766
Plaintiff in proper person

## **VERIFICATION**

I, Fidel Pajarillo, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

_____
Fidel Pajarillo

STATE OF NEVADA          )
                         ) s.s.
COUNTY OF CLARK          )

This instrument was acknowledged before me on the 23rd day of October, 2009, by Fidel Pajarillo.

_____
(Signature of Notary)

OXALYS CRUZ
NOTARY PUBLIC
STATE OF NEVADA
MY APPT. EXPIRES AUGUST 4, 2012

(Notary Seal)

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **FIRST AMENDED COMPLAINT** was made on the 23rd day of October, 2009, by hand-delivering a copy to the address as follows:

J. CHRISTOPHER JORGENSEN, ESQ.
DIANA S. ERB, ESQ.
LEWIS AND ROCA, LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, Nevada 89169
*Attorneys for Defendants Countrywide Home Loans, Inc.*
*and Recontrust Company*

Fidel Pajarillo
6706 Zephyr Wind Avenue
Las Vegas, Nevada 89139
(702) 296-4766
Plaintiff in Proper Person

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Fidel Pajarillo,

        Plaintiff,

vs.

COUNTRYWIDE HOME LOANS, INC.,
RECONTRUST COMPANY, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., and DOES I through X, inclusive,

        Defendants.

Case No. **2:09-CV-00078-LDG-GWF**

## **RECEIPT OF COPY**

1

# EXHIBIT "A"



direct dial number:
(215) 575-7245

Philip A. Italiano
pitaliano@dilworthlaw.com

May 20, 2009

Fidel Pajarillo
6706 Zephyr Wind Avenue
Las Vegas, NV 89139

Re:    Property Address: 6706 Zephyr Wind Avenue, Las Vegas, NV 89139
       BAC Loan Number 122006421 (the "Loan")

Dear Mr. Pajarillo:

This firm represents BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), f/k/a Countrywide Home Loans Servicing LP, with regard to the Loan. We are writing in response to your correspondence dated February 21, 2009, and February 23, 2009 (collectively, the "Letter"), which was sent to Countrywide Home Loans Servicing LP for response, wherein you request information on the above referenced Loan. Although couched as a "qualified written request," the information requested in your correspondence goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605 ("QWR").

As you are likely aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a consumer to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. Your Letter seeks information which goes well beyond that which is available through a QWR, and your Letter fails to provide necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

Although the Letter is not in conformity with 12 U.S.C. §2605, BAC Home Loans did review its file documents in an attempt to obtain information responsive to those of your inquiries which are consistent with the requirements of 12 U.S.C. §2605. We will address those of your inquiries which require a response in the same order as presented in your Letter as follows:

**1) Document Copies**

Dilworth Paxson LLP

Enclosed are copies of the following documents:

1. Deed of Trust;
2. Planned Unit Development Rider;
3. Adjustable Rate Rider;
4. Truth in Lending Disclosure Statement;
5. Uniform Residential Loan Application;
6. Good Faith Estimate;
7. Adjustable Rate Note;
8. Uniform Residential Appraisal Report; and
9. HUD-1 Settlement Statement.

Your requests for all other documents and copies of checks have been declined, as such requests are either overly broad, do not concern the application of payments or the disbursement of funds to you, or do not relate to any specific acts of wrongdoing that you have alleged.

**2.) Loan Accounting and Servicing Systems**
Enclosed is a Payment History that provides a detailed outline of transactions for this loan during BAC Home Loans' servicing. Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. The Payment History is designed to be user-friendly and there are no codes or terms used in the Payment History that require specific definitions. The fees that have been assessed in connection with this Loan to date and are not reflected in the Payment History are as follows: inspection fees, $133.00; recording fees, $43.00; mailing fees, $40.18; title fees, $1,652.00; attorney/trustee fee, $300.00; lien/special assessment, $2,661.22; bankruptcy fees, $300.00; recording fees, $15.00; and advertisement/publication fees, $300.00.

**3.) Debits and Credits**
See the response in 2 above.

**4) Mortgage and Assignments**
The owner of the Note is U.S. Bank National Association, as Trustee, for Harborview 2006-1 Trust Fund, whose address is 60 Livingston Avenue, Saint Paul, MN 55107. BAC Home Loans has serviced the Loan since its inception.

**5) Attorney Fees**
See the response in 2 above.

**6) Suspense/Unapplied Accounts**
See the response in 2 above.

**7) Late Fees**
Late charges are reported as interest paid effective with the 2008 tax year. Prior to the 2008 tax year, there was no interest paid or reported to the IRS relating to late charges assessed and paid to this account. See the response in 2 above.

Page 3

Dilworth Paxson LLP

**8) Property Inspections**
Please review paragraph 2 above for the fees due in connection with property inspections performed. Please refer to the enclosed documents for information regarding the circumstances whereby property inspections may be performed. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a QWR under 12 U.S.C. §2605.

**9) BPO Fees**
See the response in 2 above.

**10) Forced Placed Insurance**
Per the terms and conditions of the aforementioned documents, forced placed insurance, also known as lender secured insurance, can be secured by the lender if notification is received via property inspections that indicates the property as being vacant during the delinquency of the Loan. Lender secured insurance can also be placed if a borrower does not provide the lender with his preferred insurance information in a timely manner. This confirms that no lender secured insurance has been purchased for this account.

**11) Servicing Related Questions**
With respect to the Servicing Related Questions section, your requests do not concern the application of payments or the disbursement of funds to you, and make no allegations whatsoever of any wrongdoing by BAC Home Loans.

In providing the above response, BAC Home Loans is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the Loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

BAC Home Loans has temporarily placed the Loan into workout status to stop the foreclosure process. This Loan will be reviewed for eligibility and interest in BAC Home Loans' Homeownership Retention Program.

We encourage you to contact BAC Home Loans' Home Retention Department at (800) 669-6650. At the time of your call, you should be prepared to provide and discuss all of the following:

- Your loan number and property address;
- Your household income and expenses;
- A brief explanation of your circumstances; and
- Recent income documents such as pay stubs (last 60 days for each income earner) and benefit statements from Social Security, Disability, Unemployment, Retirement, or Public Assistance. If you are self-employed, you should be prepared to provide and discuss your last three bank statements and either your tax returns or a year-to-date profit and loss statement.

806987_1

Dilworth Paxson LLP

Please forward the required information to BAC Home Loans' Home Retention Division via facsimile at (866) 619-4249. Thank you for this opportunity to be of service.

Very truly yours,

Philip A. Italiano

Enclosures

# EXHIBIT "B"

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
2380 Performance Dr, RGV-D7-450
Richardson, TX 75082
Attn: Crystal Taylor
TS No. 08-0099113
Title Order No. G860728
Investor/Insurer No. 122006421
APN No. 176-11-210-017

THE FOLLOWING COPY OF 'NOTICE', THE ORIGINAL OF WHICH WAS FILED FOR RECORD ON
09/10/2008 IN THE OFFICE OF THE RECORDER OF Clark COUNTY, NEVADA SENT TO YOU
INASMUCH AS AN EXAMINATION OF THE TITLE TO SAIDTRUST PROPERTY SHOWS YOU
MAY HAVE AN INTEREST IN THE TRUSTEE'S SALES PROCEEDINGS

# NEVADA IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, is acting as an agent for the Beneficiary
under a Deed of Trust dated 12/02/2005, executed by FIDEL H PAJARILLO, A MARRIED MAN AS HIS
SOLE & SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 12/06/2005, as Instrument No.
0004147 (or Book 20051206, Page ) of Official Records in the Office of the County Recorder of Clark
County, Nevada.   Said obligation including ONE NOTE FOR THE ORIGINAL sum of $619,600.00.  That a
breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment
has not been made of :

FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH
BECAME DUE ON 04/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL,
INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE
AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS
AND/OR ATTORNEYS' FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME
DUE ON 01/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE
That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to
RECONTRUST COMPANY a written Declaration of Default and Demand for sale, and has deposited with
RECONTRUST COMPANY such deed of trust and all documents evidencing obligations secured thereby,
and has declared and does hereby declare all sums secured thereby immediately due and payable and has
elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed Of
Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the payment of the
amounts required by that statutory section without requiring payment of that portion of principal and interest
which would not be due had no default occured. Where reinstatement is possible. if the default is not cured
within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the
right of reinstatement will terminate and the property may there after be sold. The Trustor may have the right
to bring court action to assert the non existence of a default or any other defense of Trustor to acceleration and
sale.
To determine if reinstatement is possible and the amount, if any, to cure the default, contact: Countrywide
Home Loans, Inc, c/o RECONTRUST COMPANY, 2380 Performance Dr, RGV-D7-450, Richardson, TX
75082, PHONE: (800) 281-8219

*Form nvnodmlng (07/01)*

01 080099113

TS No. **08-0099113**
**Property Address:**
6706 ZEPHYR WIND AVENUE
LAS VEGAS, NV 89139

September 10, 2008

## Important Legal Notice

**RECONTRUST COMPANY, acting in its capacity as trustee or substituted trustee, is required by law to advise you of the following:**

**RECONTRUST COMPANY is attempting to collect a debt and any information it obtains will be used for that purpose.**

**The name of the Creditor to whom the debt is owed:**
**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR HARBORVIEW 2006-1 TRUST FUND ***MUST NOTIFY U.S. BANK N.A. OF COMMENCEMENT OF FORECLOSURE. ONCE NOTICE IS SENT, PROCEED WITH FORECLOSURE***

**Debt Validation Notice:**
If you believe that you may be entitled to the benefit of the Service Members Civil Relief Act of 2003, it is recommended that you consult with your attorney.

(a.) As of the date of this letter, you owe $695,802.50. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (800) 281-8219.

(b.) Unless you, within (30) days after the receipt of this letter, dispute the validity of the debt or any portion of the debt, RECONTRUST COMPANY will assume the amount to be valid.

(c.) If you notify RECONTRUST COMPANY in writing, to the address provided below within the thirty (30) day period, that you dispute the debt, or any portion of the debt, RECONTRUST COMPANY will obtain verification of the debt and mail it to you. If you so request in writing to the address provided below within the thirty (30) day period, RECONTRUST COMPANY will provide you with the name and address of the original creditor if it is different from the current creditor.

**RECONTRUST COMPANY**
2380 Performance Dr, RGV-D7-450
Richardson, TX 75082

Sincerely,
**RECONTRUST COMPANY**

Please write your loan number on all checks and correspondence.          *Form payoffamt (07/07)*

DATED:  September 17, 2008

RECONTRUST COMPANY, as agent for the
Beneficiary
By:  FIDELITY NATIONAL DEFAULT

State of:  California                                          )   BY:_____
County  of: _____       )   Dawna Breedlove, Assistant Secretary

On 09/17/2008 before me _____, notary public, personally appeared
_____, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

_____

# EXHIBIT "C"



Home Page | Contact Us | Location | Privacy Policy | Site Map

**Newsroom  |  About Us  |  Events  |  Why MERS?  |  Knowledge Base  Careers**

| **Tools & Services** | **_MERS_ Products ›** | MERS | MERS | MERS | MERS |
| --- | --- | --- | --- | --- | --- |
| Downloads | | MERS uRes | MERS eDelivery | MERS ScorecardQC | MERS iRegist |
| Member Directory | | | | | |
| Foreclosures | | **MERS Fraud Tools** | Mass Rev Div of Bank | **MISMO** | |
| Enhancements | | | | | |

Home » Foreclosures

Forum

Advertising

### FORECLOSURES

Payment Options

**MERS for Homeowners**

Mortgage Electronic Registration Systems, Inc. ("MERS") is a proper party that can lawfully foreclose as the mortgagee and note-holder of a mortgage loan. MERS **Membership Rule 8** provides required guidelines that must be followed when MERS is the foreclosing entity. Please click here to access the **Rules** of Membership, and reference the Rule 8 requirements.

**Property Preservation Contacts**

In mortgage foreclosure **cases**, the plaintiff has standing as the holder of the note and the mortgage. When MERS **forecloses**, MERS is the mortgagee and it is the holder of the note because a MERS officer will be **in possession** of the original note endorsed in blank, which makes MERS a holder of the bearer paper. MERS will not foreclose unless the note is endorsed in blank and held by MERS.

📞 **Contact Us**



The MERS Legal Primer **provides** a sampling of cases that address the standing of MERS to foreclose its mortgages. These cases are not meant to be an exhaustive list involving MERS but are merely to serve as a primer for the legal arguments.

### BANKRUPTCY

MERS may file Motions for Relief from Stay and Proofs of Claim related to mortgages that it holds. Each MERS member, through **its** duly appointed MERS officer(s), is responsible to ensure that pleadings on behalf of MERS **in** bankruptcy court properly describe MERS.   The MERS officer(s) must also ensure that all necessary proof is attached to the pleadings to show MERS has standing at the time the pleading is filed. Please click here to reference MERS requirements.

TOP

Copyright© 2009 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

# EXHIBIT "D"

**Fidel Pajarillo**
*6706 Zephyr Wind Avenue*
*Las Vegas, Nevada 89139*
*(702) 296-4766*

27 August 2009                    Certified Mail Number 7008 1140 0000 0670 4136

TO:   Countrywide Home Loans
      400 Countrywide Way
      Simi Valley, CA 93065

**REFERENCE:**
      **BORROWER: Fidel Pajarillo**
      **PROPERTY ADDRESS:  6706 Zephyr Wind Ave., Las Vegas, Nevada 89139**
      **APN NUMBER:  176-11-210-017**
      **LOAN NUMBER:  122006421;  LOAN CLOSING DATE:  02 Dec 2005**

Dear Sir/Madame:

Please be advised that, based upon information regarding the above-referenced mortgage loan, I believe there are claims against you and your company for negligence, breach of contract, and breach of fiduciary duty, along with other claims in law and equity which total more in financial damages than the client's equity (down payment), costs of closing, all points and interest paid to date plus the par value of the subject mortgage note.

This is a substantial claim that may exceed the policy limits on any and all insurance policies issued that cover the risks in this claim. Therefore, **please forward a copy of this letter to any company that has issued a policy of insurance covering errors, omissions, negligence or any other guarantee or indemnification relative to the above-referenced loan "closing." Failure to notify your insurance carrier may result in denial of coverage or denial of the duty to defend.**

The above-referenced loan closing involved conflicting documentation and failure to disclose the existence and true terms of a Pooling and Service Agreement and Assignment and Assumption Agreement that predated the loan closing and provided for fees, profits and payments that were never intended to be disclosed to me (as the borrower and signer of the promissory note), and that were withheld from me before, during and after the subject loan closing. It was not until exhaustive research was performed that the true facts are emerging, and which have caused me to express an **immediate need and desire to rescind the alleged subject loan transaction.**

Based upon my research of news articles, court documents, and printed and recorded interviews with people who have knowledge of the practices and policies inherent in

transactions of this nature, it is apparent that, contrary to federal and state law, you have participated in an extended pattern of conduct to further, foster, allow and promote an interstate conspiracy to deceive and defraud large groups of persons targeted as prospective borrowers in the United States, which includes me, and were further negligent in your supervision of your officers, directors, agents, affiliates, vendors and employees resulting in my suffering substantial financial and other injuries.

Further, I believe that since you, your insurance carriers, your agents, servants, vendors and employees must have known all or enough of the facts to know that I was not receiving the guidance, protection, due diligence or information to which I was entitled. Had I been apprised of the true facts, I would not have executed the papers that were presented as ordinary mortgage loan documents but which were, in fact, part of an elaborate scheme for the execution of documents purporting to be loan documents but actually resulted in the issuance of a negotiable instrument with the intent on your part, but undisclosed and unknown to me, to change the terms and conditions of payment of the mortgage note from its stated terms, pay fees and profits to a variety of undisclosed third parties who were participating in the fraudulent sale of unregulated securities which purported to be backed by the mortgage note which I signed, and that appear to have misled investors into believing that the certificates they purchased were also backed by the property secured by the mortgage note bearing my signature.

Additionally, in light of ongoing newly-revealed information regarding appraisal fraud as being an important aspect and necessary part of the scheme, I believe that the appraised value used in the loan closing was not computed in accordance with industry guidelines for using comparable time frames and geography and other indicia of probable value.  The value reported to me by the Lender and the Lender's appraiser was intentionally or negligently tied to the contract price and was significantly higher than the real fair market value at that time. This disparity since has been easily corroborated by current values in the area, to wit: concurrent with the collapse of your scheme, the values of the real property purchased by myself and countless others have declined back to the levels that existed before this scheme was initiated.

This indicates a high probability that the appraisal review required of the nominal lender was omitted and/or intentionally terminated. It also indicates that the cost of the loan was significantly higher that what was reported on the GFE and other disclosure documents at the time of closing.  It is my contention that, since larger loans provided larger mortgage-backed securities, you willingly participated in a fraud whereby you could increase profits by neglecting your legal duties and showing careless disregard for the financial well-being of the borrowers you serviced, myself included.

Further, it is apparent that you were aware and participated in the deception by which I was led to believe that the nominal lender was the actual lender, when in reality the nominal lender was "renting" its registration and charter to third parties who were neither chartered financial institutions nor registered business entities in the state in which the property was located.  I contend that you had full knowledge that the alleged "loan"

closing was a sham through which unregulated, unregistered and unchartered people and businesses engaged in banking and lending contrary to federal and state law.

The standard procedure used in these "securitized" mortgage loans is that the "loan" was table funded and that the nominal lender was in fact merely a stand-in for a series of parties who were not disclosed as the source of the funds, not disclosed as the recipient of fees (including the nominal lender who may have received a fee of 2.5% of the par value of the mortgage note), and not disclosed as the actual lender in the subject loan transaction. While all of the participants at the "loan" closing were aware of these facts, I was conveniently – but illegally – kept in the dark. As a result, I was never notified regarding the identity, authority, regulation, charter, or registration of the actual lender.

By keeping me in the dark about all of these elements of the fraud, you have taken my personal, sensitive information regarding my work history, social security number, financial data, etc. and used all of it without my permission to generate profits for yourself and your company. I believe this is defined as identity theft.

Altogether, the deceptive lending practices, lack of full disclosure, appraisal fraud, and lack of due diligence on the part of the lender concerning affordability and tangible benefits, created a condition wherein the true term of the loan was significantly overstated, making it highly likely that the loan would go into default at a time much earlier than the expressed term of the mortgage note. Reducing the term of the loan to the time of expected default and adding the inflated appraisal resulted in an APR significantly exceeding the legal interest limit under state law. These were facts known by every participant at the loan closing except me, and such practices violate applicable laws on usury entitling me to nullification of the note, extinguishment of the mortgage, treble damages and attorney fees (if needed), in addition to the refund of all payments made, and other rebates and damages suffered.

Most importantly, it cannot be determined from the filings of the parties, nor the notices sent to me as borrower, who is the current actual holder in due course, who is entitled to payment under the mortgage note, whether additional third party payments were made from insurance products that are reported to have guaranteed either the payments or the principal of the mortgage note, or whether in fact the mortgage note has been prepaid, overpaid, or any balance is owed and if so, to whom. This prevents me from notifying the true source of funds (the actual lender) of my intent to rescind. It is my determination, based upon these facts, that the loan closing was never completed and that therefore the 3 day right of rescission was neither waived nor did it expire. **Under the Federal Truth in Lending Act the appropriate party must either comply with the rescission or file a declaratory action seeking to avoid the rescission.**

In order for your institution to proceed with any foreclosure or trustee's sale/purchase of deed, **the original note must be produced**. It would seem obvious that, if indeed my mortgage was pooled with many others and sold as a separate instrument, you cannot both claim to have the original note and claim to have transferred it. Also, if the pooled

asset was sold by you to other parties, which may have included insurance guaranteeing payment, then you have already been paid in full and no longer have any right to foreclose, demand payment, take physical possession of the property, or attempt to collect any other debt attached to the note and mortgage.  I consider any of these actions by you to be an abuse of process and a violation of law, and I herewith demand that you cease and desist in all such actions.

Under separate cover, I have sent you my Qualified Written Request under Section 6 of the Real Estate Settlement Procedures Act (RESPA) to get specific answers to my concerns.  Your answers have not complied with the law and have failed to provide the requested documents and information.  I intend to seek damages for your failure to respond to over 200 requests made under RESPA.

Therefore, based on all the foregoing, please respond to the issues presented in this letter within ten (10) days of its receipt.  Your failure to respond within the ten-day period will be deemed as (1) a failure and/or refusal to comply with the rescission of the loan as stated in this letter, as well as (2) an admission that you no longer possess the original signed promissory note and cannot lawfully continue to pursue a foreclosure action/trustee's sale, both of which will be included as documentary evidence in the case file as the process moves forward toward a resolve of my increasing and continuing damages.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,


Fidel Pajarillo

# EXHIBIT "E"

# FIDEL H. PAJARILLO
# 6706 ZEPHYR WIND AVE.  LAS VEGAS, NEVADA, 89139

COUNTRYWIDE HOME LOANS, INC.                                          FEBRUARY 21, 2009
4500 PARK GRANADA
CALABASAS, CA 91302-1613
ATTN: ACCOUNT MANAGER

# RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST

### This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, and The Gramm Leach Bliley Act

REF: ALLEGED ACCOUNT # 122006421
6706 ZEPHYR WIND AVE.
LAS VEGAS, NV 89139

Dear Sir/Madam:

Because I possess evidence to support the fact that COUTRYWIDE HOME LOANS may be erroneously holding an alleged right, title, or interest in the alleged account or alleged property/note, I am writing to you regarding the accounting and servicing of this alleged mortgage and the need for a good clear and clean hands understanding and clarification from you, of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have from escrow files and subsequent records do not answer many questions.

It is my understanding that your company may have been accused of engaging in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such practices by anyone, let alone this mortgage company or anyone who has any interest this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantage, poor, elderly and minority Americans.

Needless to say, I am most concerned. I am worried that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding ACCOUNT # 122006421. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one. I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the request.**

I also request that you kindly conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate this debt so that it is accurate to the penny!

Please do not rely on previous servicers or originators records, assurances or indemnity agreement and refuse to conduct a full audit and investigation of this account. I understand that potential abuses could have deceptively, wrongfully, unlawfully, and/or illegally.

Increased the amounts of monthly payments.
Increased the principal balance I owe;
Increased escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward principal on this account; and/or assessed, charged and/or collected fees, expenses and misc. charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing or lending practices. To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage ACCOUNT # 122006421 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 2605 (e)(1)(B) (e) and Reg. X 3500.21(f)2 of the United States Code as well as a request under Truth in Lending Act [TILA] 15 U.S.C 1601. et seq. RESPA mandates substantial penalties and fines for non-compliance or failure to answer my questions in this letter within sixty [60] days of its receipt!

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by me and other to insure that this loan:

Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Act, HOEPA and other laws;

That any sale or transfer of this account or monetary instrument was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

That the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statues, State and Federal laws and is entitled to the benefits of payments;

That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me;

That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust;

That each servicers and sub-servicers for this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

That interest and principal have been properly calculated and applied to this loan;

That any principal balance has been properly calculated, amortized and accounted for;

That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account;

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies of:

1) Any certificated or uncertificated security, front and back, used for the funding of ACCOUNT # 122006421.

2) Any and all "Pool Agreement(s)" including ACCOUNT # 122006421 between COUNTRYWIDE HOME LOANS and any government sponsored entity, hereinafter (GSE).

3) Any and all "Deposit Agreement(s)" regarding ACCOUNT # 122006421 or the "Pool Agreement" including ACCOUNT # 122006421 between COUNRTRYWIDE HOME LOANS and any GSE.

4) Any and all "Servicing Agreement(s)" between COUNTRYWIDE HOME LOANS and any GSE.

5) Any and all "Custodial Agreement(s)" between COUNTRYWIDE HOME LOANS and any GSE.

6) Any and all "Master Purchasing Agreement(s)" between COUNTRYWIDE HOME LOANS and any GSE.

7) Any and all "Issuer Agreement(s)" between COUNTRYWIDE HOME LOANS and any GSE.

8) Any and all "Commitment to Guarantee" agreement(s) between COUNTRYWIDE HOME LOANS and any GSE.

9) Any and all "Release of Document agreements" between COUNTRYWIDE HOME LOANS and any GSE.

10) Any and all "Master Agreement for servicer's Principle and Interest Custodial Account" between COUNTRYWIDE HOME LOANS and any GSE.

11) Any and all "Servicers Escrow Custodial Account" between COUNTRYWIDE HOME LOANS and any GSE.

12) Any and all "Release of Interest" agreements between COUNTRYWIDE HOME LOANS and any GSE.

13) Any Trustee agreement(s) between COUNTRYWIDE HOME LOANS and COUNTRYWIDE HOME LOANS trustee regarding ACCOUNT # 122006421 or pool accounts with any GSE.

14) Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter.

15) Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note.

16) Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s)

17) Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note.

18) Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any note.

19) Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any note.

20) Please send to the requester any documentation evidencing the Mortgage or Deed of Trust is **not** a constructive trust or any other form of trust.

21) All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers or sub-servicers of this mortgage account from the inception of this account to the date written above.

22) All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and renew this mortgage account may properly conduct their work.

23) All assignments, transfer, along, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

24) All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

25) All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

26) The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

27) All escrow analyses conducted on this account from the inception of this account until the date of this letter;

28) The front and back of each and every cancelled check, draft or debit notice issued for payment of closing costs, fee and expenses listed on any and all disclosure statement(s) including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

29) Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by other or me on this account.

30) All letters, statements and documents sent to me by your company;

31) All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

32) All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession of any affiliate, parent

company, agent, sub-servicers, servicers, attorney or other representative of your company.

33) All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

34) All electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

35) All copies of property inspection reports, appraisals, BPOs and reports done on the property.

36) All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

37) All checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

38) All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

39) All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until present date.

40) All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account until present date?

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below.

**ACCOUNT ACCOUNTING & SERVICING SYSTEM:**

**1)** Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that this experts can decipher the data provided.

2) For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

3) For each account accounting and servicing system used by you and any sub-services or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS & CREDITS

1) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to this account as well as the date any credit was received.

2) In a spreadsheet form or in letterform in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

3) For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilized.

4) For each transaction code, please provide me with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

1) Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

3) Is your company the servicers of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4) Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5) If yes, please detail for me the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**ATTORNEY FEES**

1) For purposes of my questions below dealing with attorney fees, please consider the terms attorney fees and legal fees to be one and the same.

2) Have attorney fees ever been assessed to this account from the inception of this account to the present date?

3) If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessment to this account?

4) Have attorney fees ever been charged to this account from the inception of this account to the present date?

5) If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account?

6) Have attorney fees ever been collected from this account from the inception of this account to the present date?

7) If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account?

8) Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date?

9) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment, charge or collection of attorney fees?

10) Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month that such fee was assessed from the inception of this account to present date.

11) Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month that such fee was collected from the inception of this account to present date.

12) Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

13) Please detail and list for me in writing any adjustments in attorney fees collected and on

what date such adjustment were made and the reasons for such adjustment.

14) Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16) How much in total attorney fees have been assessed to this account from the inception of this account until present date?

17) How much in total attorney fees have been collected on this account from the inception of this account until present date?

18) How much in total attorney fees have been charged to this account from the inception of this account until present date?

19) Please send to me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees assessed or collected from this account.

**SUSPENSE/UNAPPLIED ACCOUNTS**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1) Has there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

2) If yes, please explain the reason for each and every suspense transaction that occurred on this account? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3) In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account until present date?

**LATE FEES**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one and the same.

1) Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2) Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3) Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

5) Please detail for me in writing what expenses and damages you incurred for any late payment that I made.

6) Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7) If yes, please describe what expenses or charges were charged or assessed to this account?

8) Please describe for me in writing what expenses you or others undertook due to any late payment that I made.

9) Please describe for me in writing what damages you or others undertook due to any late payment that I made.

10) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate. Late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

12) Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month that such late fee was collected from the inception of this account to present date.

13) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

14) Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15) Is interest cost allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

17) If yes, how much in total late charges have been assessed to this account from the inception of this account until present date?

18) Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19) Have late charges been collected on this account from the inception of this account until present date? Yes or No?